**Kurt KAUSLER, et al., Plaintiffs,**

v.

**William B. CAMPEY, et al., Defendants.**

No. 90–2142C(6).

United States District Court,
E.D. Missouri, E.D.

April 14, 1992.

John Weller, Kell, Custer, Weller, Miller & Flach, Mark H. Neill, St. Louis, Mo., for plaintiffs.

Gregory Campbell, Diekemper, Hammond, Shinners, Turcotte & Larrew, St. Louis, Mo., for defendants.

## MEMORANDUM

GUNN, District Judge.

Before the Court is the issue whether plaintiffs have good cause to bring their second count, asserting violation of section 501(a) of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 401–531. Plaintiffs Kurt Kausler and Thomas Jennings, on behalf of themselves and all other members of United Food and Commercial Workers Union, Local 655, AFL–CIO, bring this two count action against the members of the present local union executive board—Local 655's president, secretary-treasurer, recorder and seventeen vice presidents—as well as the local union.

Plaintiffs' first count challenges the propriety under 29 U.S.C. § 411(a)(3) of an increase in the members' dues. In their second count, plaintiffs claim that certain salary increases and activities of the interim president prior to his selection by the executive board violate 29 U.S.C. § 501(a).

Plaintiffs may bring their second count only "upon leave of court ... and for good cause shown." 29 U.S.C. § 501(b). Defendants filed a motion to dismiss for lack of subject matter jurisdiction due to failure to comply with 29 U.S.C. § 501(b) or, in the alternative, motion for a hearing to determine "good cause." The Court granted the motion with respect to the request for a hearing and denied it in all other respects.

At the appointed time for the hearing, the parties agreed to submit this matter on a stipulated record.[1]

Plaintiffs' second count challenges several events. First, plaintiffs claim defendants improperly increased executive board members' salaries and the rank and file vice presidents' compensation for attending monthly board meetings. On July 18, 1988, the members of the local union executive board, except the local union's president Jack Valenti who was not present, approved a 10.2% salary increase for all full-time officers and staff representatives effective retroactively to July 1, 1988. The executive board made special provisions for Valenti. His raise was retroactive to January 1, 1988. The board also recommended that rank and file vice presidents receive an additional ten dollars for a total of fifty dollars for attending monthly executive board meetings. Thereafter, at the regular monthly membership meeting in July of 1988, at which a quorum was present, the executive board's minutes from its July 18, 1988 meeting were read to the members.[2] The recorder moved that the members approve the minutes as read. Hearing no objection, the minutes were approved.

Plaintiffs also find fault with several events surrounding defendant William B. Campey's term as interim president prior to Jack Valenti's retirement. On December 12, 1988 at a regular meeting of the local union executive board, Local 655's president, Jack Valenti, recommended that Executive Assistant William B. Campey fill-in for Valenti during his vacation from January 1, 1989 through April 1, 1989 and that at the appropriate time the executive

---

1. The Court ordered the parties to file a stipulation of facts and memoranda of law addressing the issue of plaintiffs' good cause to proceed with this action. The parties, however, stipulated to a new, additional issue: whether or not plaintiffs requested the union to sue to recover for damages prior to filing their suit as required by 29 U.S.C. § 501(b). Because the Court finds plaintiffs do not have good cause, the Court need not reach this issue.

2. The parties stipulated that a quorum was present at the general monthly meeting. Plaintiffs maintain, however, that less than seven rank and file members attended the meeting. The bylaw defining a quorum for purposes of a regular membership meeting requires only that seven active members attend, not that seven rank and file members attend. Bylaws art. VI, § A.2. Plaintiffs also allude to a problem in maintaining records of attendance in accordance with the bylaws. Section 501(a), however, pertains only to the duties of representatives of a labor organization with regard to the use of money and property.

board would select Campey to fill the unexpired balance of Valenti's term of office. Defendant William Swift was recommended to replace Campey. Valenti suggested that Campey and Swift receive salaries commensurate with the positions they were assuming. The executive board unanimously approved all of Valenti's recommendations. At the next regularly held general membership meeting on December 27, 1988, at which a quorum was present, the executive board's minutes from its December 12, 1988 meeting were read to the members. The recorder moved that the members approve the minutes as read. Hearing no objection, the minutes were approved.

While Campey was interim president, he ordered a new supply of pens bearing his name as president. These pens were not distributed until all of the pens imprinted with Valenti's name were disbursed and the executive board officially selected Campey on May 8, 1989.

█ Section 501(a) prohibits expending union money in a manner contrary to its constitution or bylaws as well as failing to hold union money solely for the union's benefit. 29 U.S.C. § 501(a). The "good cause" condition precedent to maintenance of an action by a union member under section 501(a) prevents groundless or vexatious suits against union officials. *Local 314, Nat'l Post Office Mail Handlers v. National Post Office Mail Handlers*, 572 F.Supp. 133, 138 (E.D.Mo.1983). This standard requires the plaintiff to show " 'a reasonable likelihood of success and, with regard to any material facts he alleges, [he has] [sic] a reasonable ground for belief in their existence.' " *Id.* at 139 (quotations omitted).

█ The constitution of the United Food and Commercial Workers International Union (UFCW) states that the local union executive board shall establish local union officers' salaries. UFCW const. art. 34(H). Absent further approval requirements contained in the local union bylaws, increases in an officer's salary can occur without any membership action. *See id.* Local 655's bylaws, however, require that salary increases receive "approval by the membership of the Local Union." Bylaws art. VII, § G. Although neither document defines "approval," the local president has authority to interpret the bylaws. *See* Bylaws art. VII, § C.3.

The salary and monthly meeting pay increases at issue here were recommended by the local union executive board. They were approved when no one objected to the board's minutes at the next general membership meeting.[3] Although plaintiffs contend that there was no notice that salary increases would be approved at the next general meeting, neither the bylaws nor the constitution mandate such notice. Plaintiffs have not demonstrated a reasonable likelihood that they can prove that the salary increases were established in violation of the union's constitution and bylaws.

█ Plaintiffs also contend the increases were excessive. The purpose of section 501(a), however, is not to allow for judicial second-guessing of every salary adopted in accordance with the union's constitution and bylaws. *Morrissey v. Curran*, 650 F.2d 1267, 1274 (2d Cir.1981). The size of the increases alone does not give plaintiffs "good cause" to bring a section 501 action.

█ As to Campey's actions as acting president, section 501(a) does not proscribe all activities that violate union bylaws but merely those pertaining to the management of money or property. Accordingly, section 501(a) is not the proper vehicle for a claim that Campey improperly declared himself president prior to his election in May of 1989.

█ As to the purchase of pens and box cutters, plaintiffs solely contend that Cam-

---

**3.** Defendants maintain that certain officers' receive salaries only by virtue of their staff positions. For those individuals, the president can set compensation subject only to local union executive board approval. Bylaws art. VII, § C.7. Because plaintiffs do not have good cause to claim that the increases did not receive membership approval, the Court need not consider which, if any, individual received an increase in their position as a staff member rather than as an officer.

pey should not have ordered such pens prior to his selection by the local union executive board. The board has the authority to fill a vacancy such as the one created when local union president Valenti retired prior to the expiration of his term. *See* UFCW const. art. 35(D)(2); Bylaws art. XII, § P. Once the board adopted Valenti's recommendation to elect Campey when Valenti retired, it seemed inevitable that Campey would be the next president. Furthermore, no pens were distributed until after May 8, 1989 when Campey officially became the interim president. As to this issue, plaintiffs have also failed to establish "good cause."

 Lastly, plaintiffs take issue with the increased compensation received by Campey and Swift when they assumed their new positions. The board can select individuals to fill officer vacancies. This authority would naturally encompass the power to ensure each individual receives all the emoluments of his new position. Plaintiffs have not established good cause to bring this or any of their claims arising under section 501(b).